UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JUMAPILI IKUSEGHAN, individually
and on behalf of all others similarly
situated,

                    Plaintiff,

        v.

MULTICARE HEALTH SYSTEM, a
Washington nonprofit corporation,

                    Defendant.

CASE NO. C14-5539 BHS

ORDER GRANTING
PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION

This matter comes before the Court on Plaintiff Jumapili Ikuseghan's

("Ikuseghan") motion for class certification (Dkt. 29).  The Court has considered the

pleadings filed in support of and in opposition to the motion and the remainder of the file

and hereby grants the motion and modifies the proposed class definition for the reasons

stated herein.

## I. PROCEDURAL HISTORY

On July 7, 2014, Ikuseghan filed a class action complaint against Defendant

MultiCare Health System ("MultiCare").  Dkt. 1 ("Comp.").  Ikuseghan alleges that

MultiCare (1) violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C.

§ 227, and (2) invaded her privacy by intrusion under Washington law.  *Id.* ¶¶ 33–43.

1    On May 21, 2015, Ikuseghan moved to certify a class under the TCPA.  Dkt. 29.

2    On June 8, 2015, MultiCare responded.  Dkt. 35.  On June 12, 2015, Ikuseghan replied.

3    Dkt. 37.

4                          **II. FACTUAL BACKGROUND**

5           MultiCare operates hospitals and health clinics in Washington.  Comp. ¶ 7.  In

6    2008, MultiCare contracted with Hunter Donaldson, a California company, to identify

7    payment sources for patients who received treatment at MultiCare's facilities.  Dkt. 34,

8    Declaration of Chase Alvord ("Alvord Dec."), Ex. A ("Perisho Dep.") 8:22–24, 26:21–

9    27:12; Dkt. 36, Declaration of Mike Madden ("Madden Dec."), Ex. 1 at 20.

10          Hunter Donaldson obtained patient telephone numbers from MultiCare's medical

11   records.  Perisho Dep. 71:18–24; Alvord Dec., Ex. D ("Hilen Dep.") 13:11–14:17.

12   Hunter Donaldson then used automated dialing systems to call these numbers.  Perisho

13   Dep. 34:21–35:1, 38:22–39:23, 41:5–46:12.  Hunter Donaldson made 55,091 phone calls

14   to 3,041 unique cell phone numbers.  Dkt. 31, Declaration of Anya Verkhovskaya

15   ("Verkhovskaya Dec.") ¶¶ 13, 15.

16          In June 2013, Ikuseghan received treatment at a MultiCare hospital in Tacoma,

17   Washington.  Dkt. 30, Declaration of Jumapili Ikuseghan ("Ikuseghan Dec.") ¶ 2.

18   MultiCare asks its patients to sign a Financial Agreement.  This agreement provides that

19   MultiCare may use and release a patient's protected health information, including

20   telephone numbers, in order for MultiCare to get paid for the patient's treatment.

21   Madden Dec., Ex. 2 at 52.  MultiCare also asks its patients to sign a Conditions of

22   Treatment form.  This form provides that "MultiCare may release only information

1  needed by any person, health care provider, corporation, or program to decide what [the

2  patient's] benefits are and pay for services given to [the patient]." *Id.* at 53.  Ikuseghan

3  signed these forms when she received treatment at MultiCare in April 2013, but does not

4  recall signing them in June 2013.  Dkt. 40, Second Declaration of Jumapili Ikuseghan

5  ("Ikuseghan Dec. II"), Ex. 1 ("Ikuseghan Dep.") 23:23–28:23.  Although she does not

6  recall signing these forms in June 2013, Ikuseghan does not deny signing them.

7  Ikuseghan Dec. II ¶ 2.

8         Following her treatment at MultiCare, Ikuseghan received at least seven

9  automated calls to her cell phone from Hunter Donaldson regarding payment options for

10  her medical treatment at MultiCare.  Ikuseghan Dec. ¶¶ 3–4.

11                              **III. DISCUSSION**

12         Ikuseghan seeks to certify a nationwide class under the TCPA.  Dkt. 29.

13  MultiCare opposes the motion, arguing that Ikuseghan lacks Article III standing and has

14  not satisfied the requirements for class certification under Federal Rule of Civil

15  Procedure 23.  Dkt. 35.  The Court will address standing first and then turn to class

16  certification.

17  **A.     Article III Standing**

18         MultiCare first argues that Ikuseghan lacks Article III standing to bring this suit.

19  Dkt. 35 at 11.  "Article III of the Constitution limits the judicial power of the United

20  States to the resolution of 'Cases' and 'Controversies,' and 'Article III

21  standing . . . enforces the Constitution's case-or-controversy requirement.'"  *Hein v.*

22  *Freedom From Religion Foundation, Inc.*, 551 U.S. 587, 597–98 (2007) (quoting

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)).  Ikuseghan bears the burden of establishing that she has Article III standing prior to class certification.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011).  To establish Article III standing, Ikuseghan must show that: (1) she suffered an injury in fact; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable decision.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

MultiCare only challenges the first standing requirement—injury in fact.  Dkt. 35 at 11.  An injury in fact results from the "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'"  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted).  Here, Ikuseghan alleges that she suffered an economic injury because Hunter Donaldson's calls on behalf of MultiCare were charged against the cell phone minutes she purchased.  Ikuseghan Dec. II ¶ 3; *see also* Madden Dec., Ex. 5.  Economic injury is a sufficient basis for Article III standing.  *Sierra Club v. Morton*, 405 U.S. 727, 733–34 (1972); *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996).

In addition to economic injury, Ikuseghan alleges that MultiCare violated her statutory rights under the TCPA.  Dkt. 37 at 7–8.  "The injury required by Article III can exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'"  *Fulfillment Servs. Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614, 618–19 (9th Cir. 2008) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).  "Essentially, the

1   standing question in such cases is whether the constitutional or statutory provision on

2   which the claim rests properly can be understood as granting persons in the plaintiff's

3   position a right to judicial relief." *Warth*, 422 U.S. at 500.

4         Congress enacted the TCPA to protect individuals from receiving unwanted and

5   privacy-invading phone calls. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745

6   (2012). The TCPA provides a private right of action for individuals who receive

7   unsolicited, automated calls to their cell phones. 47 U.S.C. § 227(b)(3). Ikuseghan

8   alleges that Hunter Donaldson made multiple automated calls to her cell phone on behalf

9   of MultiCare without her prior consent. Comp. ¶¶ 17–19, 33–39. She further alleges that

10  these calls invaded her privacy. *Id.* ¶¶ 42–43. Other district courts in this circuit have

11  recognized that a violation of the TCPA may serve as a concrete injury for Article III

12  standing. *See Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267, 2015 WL 431148, at *1–2

13  (N.D. Cal. Feb. 2, 2015); *Olney v. Job.com, Inc.*, No. 1:12-cv-01724, 2013 WL 5476813,

14  at *5–6 (E.D. Cal. Sept. 30, 2013); *Smith v. Microsoft Corp.*, No. 11-cv-1958, 2012 WL

15  2975712, at *3–6 (S.D. Cal. July 20, 2012). For these reasons, the Court concludes that

16  Ikuseghan has demonstrated injury in fact for the purposes of Article III standing.

17  **B.    Class Certification**

18        **1.    Legal Standard**

19        "Class certification is governed by Federal Rule of Civil Procedure 23." *Wal-*

20  *Mart Stores, Inc. v. Dukes*, __U.S.__, 131 S. Ct. 2541, 2548 (2011). "As the party

21  seeking class certification, [Ikuseghan] bears the burden of demonstrating that she has

22  met each of the four requirements of Rule 23(a) and at least one of the requirements of

1    Rule 23(b)." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001),

2    *amended by* 273 F.3d 1266 (9th Cir. 2001).  In addition to the Rule 23 requirements,

3    Ikuseghan must show that the proposed class members are ascertainable.  *See Smith v.*

4    *Microsoft Corp.*, 297 F.R.D. 464, 467 (S.D. Cal. 2014); *Agne v. Papa John's Intern., Inc.*,

5    286 F.R.D. 559, 566 (W.D. Wash. 2012); *Xaxier v. Philip Morris USA, Inc.*, 787 F. Supp.

6    2d 1075, 1089 (N.D. Cal. 2011).

7         "Rule 23 does not set forth a mere pleading standard." *Dukes*, 131 S. Ct. at 2551.

8    Rather, "[a] party seeking class certification must affirmatively demonstrate his

9    compliance with the Rule . . . ." *Id.*  Before certifying a class, the Court must conduct a

10   "rigorous analysis" to determine whether Ikuseghan has met the prerequisites of Rule 23.

11   *Zinser*, 253 F.3d at 1186.  "While the trial court has broad discretion to certify a class, its

12   discretion must be exercised within the framework of Rule 23." *Id.*

13        **2.    Proposed TCPA Class**

14        The TCPA makes it unlawful "to make any call (other than a call . . . made with

15   the prior express consent of the called party) using any automatic telephone dialing

16   system or an artificial or prerecorded voice . . . to any telephone number assigned to

17   a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A).  Courts are authorized to

18   award either actual damages or statutory damages of $500 per violation. *Id.* § 227(b)(3).

19   In cases of willful or knowing violations, courts may award treble damages. *Id.*

20        Ikuseghan seeks to certify the following class under the TCPA:

21            All persons or entities to whose cellular telephone number Hunter
             Donaldson made a call on behalf of MultiCare through the use of an
22

1    automatic telephone dialing system or an artificial or prerecorded voice at
2    any time on or after July 7, 2010.[1]

Dkt. 29 at 9.

3        **3.    Ascertainability**

4        Although there is no explicit ascertainability requirement in Rule 23, district

5    courts in this circuit have routinely required the party seeking certification to demonstrate

6    that the proposed class is ascertainable.  *See, e.g.*, *Agne*, 286 F.R.D. at 566 ("[E]nsuring

7    that the members of the class can be ascertained with reference to objective criteria is an

8    implicit requirement for class certification." (internal quotation marks omitted)).

9    Specifically, "[a] class definition should be 'precise, objective, and presently

10   ascertainable.'"  *Id.* (quoting *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319

11   (C.D. Cal. 1998)).  "While the identity of each class member need not be known at the

12   time of certification, the class definition must be definite enough so that it is

13   administratively feasible for the court to ascertain whether an individual is a member."

14   *Id.* (internal quotation marks omitted).

15       MultiCare contends that Ikuseghan's class cannot be reasonably ascertained

16   because she has not proposed any method of tying the cell phone numbers to identifiable

17   persons.  Dkt. 35 at 12–16.  Ikuseghan, however, has demonstrated that class members

18   can be readily identified through objective criteria.  Ikuseghan intends to rely on

19   MultiCare's patient accounts, Hunter Donaldson's call records, and reverse directory look

20   ─────────────────────

21       [1] Excluded from the class are MultiCare, the officers and directors of MultiCare, at all
     relevant times, members of their immediate families and their legal representatives, heirs,
     successors or assigns and any entity in which MultiCare has or had a controlling interest.  Dkt.
22   29-1 at 1.

1    ups to identify class members.  Dkt. 37 at 10; Verkhovskaya Dec. ¶ 7; Dkt. 39, Second

2    Declaration of Anya Verkhovskaya ¶¶ 8–14.  The use of such objective criteria satisfies

3    the ascertainability requirement.  *See Booth v. Appstack, Inc.*, No. C13-1533, 2015 WL

4    1466247, at *4 (W.D. Wash. Mar. 30, 2015); *Agne*, 286 F.R.D. at 566.

5           MultiCare also argues that Ikuseghan's proposed class is not ascertainable because

6    the class includes members who have suffered no injury and therefore lack standing to

7    sue.  Dkt. 35 at 16.  According to MultiCare, Ikuseghan's class includes individuals who

8    received calls lasting less than six seconds, which indicates that these calls were either

9    aborted or not completed.  *Id.*  The Court recognizes the issue raised by MultiCare.  This

10   issue, however, was not fully briefed by the parties and the Court declines to rule on it in

11   this order.  MultiCare may bring a subsequent motion to amend the class definition.  Fed.

12   R. Civ. P. 23(c)(1)(C).

13          **4.     Rule 23(a) Requirements**

14          Under Rule 23(a), a party seeking certification of a class must satisfy four

15   requirements: (1) numerosity; (2) typicality; (3) commonality; and (4) adequacy of

16   representation.  *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014).  The Court will

17   address each requirement in turn.

18          **a.     Numerosity**

19          Numerosity is satisfied where "the class is so numerous that joinder of all

20   members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Numerosity is presumed where

21   the plaintiff class contains forty or more members."  *In re Wash. Mut. Mortg.-Backed*

22

1  *Sec. Litig.*, 276 F.R.D. 658, 665 (W.D. Wash. 2011) (quoting *In re Cooper Cos. Inc. Sec.*

2  *Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009)).

3      Here, Ikuseghan has presented evidence that her proposed class consists of 3,041

4  members.  Verkhovskaya Dec. ¶ 15.  MultiCare does not dispute that Ikuseghan's

5  proposed class is sufficiently numerous.  *See* Dkt. 35.  Because the proposed class

6  contains well over forty members and joinder would be impracticable, the Court finds

7  that the numerosity requirement is satisfied.  *See In re Wash.*, 276 F.R.D. at 665.

8          **b.     Typicality**

9      Typicality requires that "the claims or defenses of the representative parties are

10  typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The purpose of

11  the typicality requirement is to assure that the interest of the named representative aligns

12  with the interests of the class."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th

13  Cir. 1992).  To satisfy typicality, Ikuseghan must show that "each class member's claim

14  arises from the same course of events, and each class member makes similar legal

15  arguments to prove the defendant's liability."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124

16  (9th Cir. 2009).  When evaluating typicality, courts consider "whether other members

17  have the same or similar injury, whether the action is based on conduct which is not

18  unique to the named plaintiffs, and whether other class members have been injured by the

19  same course of conduct."  *Hanon*, 976 F.2d at 508 (internal quotation marks omitted).

20      Here, Ikuseghan's claims arise from Hunter Donaldson's automated calls to her

21  cell phone after she received medical treatment at a MultiCare facility.  Ikuseghan has

22  presented evidence showing that Hunter Donaldson's calls were not unique to her and

1    that the putative class members received the same type of automated calls from Hunter

2    Donaldson.  *See, e.g.*, Perisho Dep. 34:21–35:1, 38:22–39:23, 41:5–46:12, 71:18–22;

3    Hilen Dep. 13:11–17.

4        MultiCare argues that individualized issues of consent preclude a finding of

5    typicality.  Dkt. 35 at 17.  According to MultiCare, Ikuseghan's claims are not typical of

6    the class because Ikuseghan's class includes both MultiCare patients and non-patients,

7    and some patients gave prior express consent to be called.  *Id.*  To support its argument,

8    MultiCare points to its Consent to Treatment and Financial Agreement forms—which

9    authorize the limited use of a patient's health information, including telephone

10   numbers—as well as Ikuseghan's deposition testimony.  *Id.*  Ikuseghan testified that she

11   signed these forms in April 2013, but does not remember signing them in June 2013.

12   Ikuseghan Dep. 23:23–28:23.  Although she does not recall signing these forms in June

13   2013, Ikuseghan does not deny signing them.  Ikuseghan Dec. II ¶ 2.

14       In response, Ikuseghan argues that whether MultiCare's standardized forms

15   constitute prior express consent is an issue subject to class-wide resolution.  Dkt. 37 at

16   12–13.  In making this argument, Ikuseghan relies on a Florida case in which the court

17   determined that "[w]hether the provision of a phone number on [hospital] admissions

18   paperwork equates to express consent is a common question to all class members,

19   because all class members filled out paperwork at the time of treatment."  *Manno v.*

20   *Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 686 (S.D. Fla. 2013).

21       Ikuseghan's class definition, however, includes patients who signed MultiCare's

22   standardized forms, patients who did not sign the forms, and non-patients.  While the

1  resolution of the consent issue will likely apply to most class members, it will not

2  necessarily apply to all class members.  This issue also highlights that Ikuseghan's claims

3  arise from a different course of events than some of the class members she seeks to

4  represent because she signed MultiCare's standardized forms before receiving calls from

5  Hunter Donaldson.

6         The Court therefore exercises its discretion to modify Ikuseghan's class definition.

7  *See Armstrong v. Davis*, 275 F.3d 849, 872 (9th Cir. 2001) ("Where appropriate, the

8  district court may redefine the class.").  The Court modifies the class definition to apply

9  to persons "who received medical treatment at a MultiCare facility" and "who signed

10 MultiCare's Financial Agreement and Conditions of Treatment forms."  In light of this

11 modification,[2] whether MultiCare's standardized forms constitute prior express consent is

12 an issue subject to class-wide resolution and is not a unique defense "which threaten[s] to

13 become the focus of the litigation."  *Hanon*, 976 F.2d at 508.  MultiCare's typicality

14 challenge based on consent therefore fails, and the Court finds that the typicality

15 requirement is satisfied.

16              c.     **Commonality**

17        Commonality requires "questions of law or fact common to the class."  Fed. R.

18 Civ. P. 23(a)(2).  To satisfy commonality, Ikuseghan's claims must "depend upon a

19 common contention such that determination of its truth or falsity will resolve an issue that

20 is central to the validity of each claim in one stroke."  *Abdullah v. U.S. Sec. Assocs., Inc.*,

21 ─────────────

22      [2] This modification does not alter the Court's numerosity finding, because MultiCare patients constitute the majority of Ikuseghan's proposed class.

1   731 F.3d 952, 957 (9th Cir. 2013) (internal quotation marks omitted).  Put another way,

2   "what matters to class certification . . . is not the raising of common 'questions'—even in

3   droves—but, rather the capacity of a classwide proceeding to generate common *answers*

4   apt to drive the resolution of the litigation." *Dukes*, 131 S. Ct. at 2551.  "Dissimilarities

5   within the proposed class are what have the potential to impede the generation of

6   common answers." *Id.*

7        Ikuseghan's TCPA claims are predicated on a common course of conduct: Hunter

8   Donaldson used automated dialing systems to call cell phone numbers on behalf of

9   MultiCare.  Comp. ¶¶ 33–39.  The core issues to be resolved in this case are: (1) whether

10  Hunter Donaldson used automatic dialing equipment to call cell phones; (2) whether

11  MultiCare's standardized patient forms constitute prior express consent; and (3) whether

12  MultiCare is vicariously liable for Hunter Donaldson's calls.  These issues are common

13  to all putative class members, central to the validity of their claims, and can be resolved

14  "in one stroke."  *See Booth*, 2015 WL 1466247, at *8; *Whitaker v. Bennet Law PLLC*,

15  No. 13-cv-3145, 2014 WL 5454398, at *5 (S.D. Cal. Oct. 24, 2014); *Agne*, 286 F.RD. at

16  568.  MultiCare does not challenge commonality.  *See* Dkt. 35.  The Court concludes that

17  the commonality requirement is satisfied.

18           **d.   Adequacy**

19        As the named plaintiff, Ikuseghan must "fairly and adequately protect the interests

20  of the class."  Fed. R. Civ. P. 23(a)(4).  "To determine whether named plaintiffs will

21  adequately represent a class, courts must resolve two questions: (1) do the named

22  plaintiffs and their counsel have any conflicts of interest with other class members and

1  (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf

2  of the class?" *Ellis*, 657 F.3d at 985 (internal quotation marks and citations omitted).

3        MultiCare does not contest the adequacy of representation in this case.  The Court

4  is not aware of any conflicts of interest between Ikuseghan and the putative class

5  members.  Moreover, Ikuseghan's counsel—Tousley Brain Stephens PLLC ("Tousley

6  Brain Stephens")—has been appointed as class counsel in other class action lawsuits,

7  including a previous TCPA case.  Dkt. 32, Declaration of Kim Stephens ¶¶ 2–4.  For

8  these reasons, the Court finds that Ikuseghan has satisfied the adequacy requirement.

9        **5.**    **Rule 23(b) Requirements**

10        In addition to the four requirements of Rule 23(a), a party seeking class

11  certification must also satisfy at least one of three categories of Rule 23(b).  *Zinser*, 253

12  F.3d at 1186.  Here, Ikuseghan seeks certification under Rule 23(b)(3).  Dkt. 29.  A class

13  action may be maintained under Rule 23(b)(3) if "questions of law or fact common to

14  class members predominate over any questions affecting only individual members," and

15  if "a class action is superior to other available methods for fairly and efficiently

16  adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Accordingly, Ikuseghan must

17  establish both predominance of common issues and superiority of the class action.

18        **a.**    **Predominance**

19        "The predominance inquiry focuses on the relationship between the common and

20  individual issues and tests whether proposed classes are sufficiently cohesive to warrant

21  adjudication by representation."  *Vinole v. Countrywide Home Loans*, 571 F.3d 935, 944

22  (9th Cir. 2009) (internal quotation marks omitted).  Although related to Rule 23(a)'s

1   commonality requirement, the predominance inquiry is "far more demanding." *Amchem*

2   *Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). "[A] central concern of the Rule

3   23(b)(3) predominance test is whether 'adjudication of common issues will help achieve

4   judicial economy.'" *Vinole*, 571 F.3d at 944 (quoting *Zinser*, 253 F.3d at 1189).

5        MultiCare again argues that individualized issues of consent predominate. Dkt. 35

6   at 18. As discussed above, the issue of whether MultiCare's standardized forms

7   constitute express consent can be resolved on a class-wide basis because of the narrower

8   class definition. MultiCare nevertheless argues that some class members may allege a

9   lack of consent "under the theory that the consent of a spouse or other individual who

10  accompanied them to the hospital and signed the paperwork does not transfer." Dkt. 35

11  at 18. This argument is entirely speculative and thus insufficient to defeat class

12  certification. *See Agne*, 286 F.R.D. at 567.

13       On the current record, the Court finds that common issues predominate. In light of

14  the modified class definition, Ikuseghan and the putative class members all signed

15  MultiCare's standardized forms and all received automated calls to their cell phones from

16  Hunter Donaldson. Ikuseghan and the class members will either prevail or lose together

17  on their TCPA claims. Thus, the proposed class is sufficiently cohesive to warrant

18  adjudication by representation. *Vinole*, 571 F.3d at 944.

19            **b.    Superiority**

20       The superiority inquiry "requires determination of whether the objectives of the

21  particular class action procedure will be achieved in the particular case." *Hanlon v.*

22  *Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998). "In determining superiority, courts

1    must consider the four factors of Rule 23(b)(3)." *Zinser*, 253 F.3d at 1190.  These factors

2    include: (1) the class members' interests in individually controlling the prosecution or

3    defense of separate actions; (2) the extent and nature of any litigation concerning the

4    controversy already begun by or against class members; (3) the desirability or

5    undesirability of concentrating the litigation of the claims in the particular forum; and (4)

6    the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

7         In considering the Rule 23(b)(3) factors, the Court finds that the first factor weighs

8    in favor of superiority.  "Where damages suffered by each putative class member are not

9    large, [the first] factor weighs in favor of certifying a class action." *Zinser*, 253 F.3d at

10   1190.  Statutory damages under the TCPA are limited to $500 per phone call.  47 U.S.C.

11   § 227(b)(3).  Because individual damages are small, it is unlikely that class members

12   would litigate TCPA claims on their own. *See Agne*, 286 F.R.D. at 571 ("Five hundred

13   dollars is not sufficient to compensate the average consumer for the time and effort that

14   would be involved in bringing a small claims action . . . ."); *see also Booth*, 2015 WL

15   1466247, at *13; *Kavu*, 246 F.R.D. at 650.

16        The second factor also weighs in favor of superiority.  Neither party has identified

17   any other TCPA suit arising from Hunter Donaldson's phone calls on behalf of

18   MultiCare.  As to the third factor, the majority of class members will be located in this

19   particular forum because MultiCare's facilities are located in Washington.  Comp. ¶ 7.

20   Finally, it appears that this case is manageable as a class action.  As discussed above, the

21   class members' claims can be resolved by common evidence, as can the issue of consent.

22   If the issues in this case prove unmanageable, the Court "retains the flexibility to address

problems with a certified class as they arise, including the ability to decertify." *United*

*Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union*

*v. ConocoPhillips Co.*, 593 F.3d 802, 807 (9th Cir. 2010).  In sum, the Court finds that

the superiority requirement is satisfied.

### 6.     Certification

For the foregoing reasons, the Court concludes that Ikuseghan has satisfied Rule

23's requirements and provided a class definition that is ascertainable.  The Court grants

Ikuseghan's motion and certifies her TCPA class as modified herein.

### 7.     Class Counsel

"[A] court that certifies a class must appoint class counsel."  Fed. R. Civ. P.

23(g)(1).  In appointing class counsel, the Court must consider: (1) the work counsel has

done in identifying or investigating potential claims in the action; (2) counsel's

experience in handling class actions, other complex litigation, and the types of claims

asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the

resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).

Ikuseghan seeks to appoint Tousley Brain Stephens as class counsel.  Dkt. 29-1 at

2.  MultiCare does not oppose the appointment.  *See* Dkt. 35.  Upon review, the Court is

satisfied that Tousley Brain Stephens meets the criteria of Rule 23(g) and should serve as

class counsel.

1

**IV. ORDER**

2         Therefore, it is hereby **ORDERED** that Ikuseghan's motion for class certification

3   (Dkt. 29) is **GRANTED.**  The Court certifies a TCPA class as follows:

4         All persons who received medical treatment at a MultiCare facility,
          who signed MultiCare's Financial Agreement and Conditions of Treatment

5         forms, and to whose cellular telephone number Hunter Donaldson made a
          call on behalf of MultiCare through the use of an automatic telephone

6         dialing system or an artificial or prerecorded voice at any time on or after
          July 7, 2010.

7
    The Court appoints Tousley Brain Stephens PLLC as class counsel.

8
          Dated this 29th day of July, 2015.

9

10

11                                              _____
                                                BENJAMIN H. SETTLE
12                                              United States District Judge

13

14

15

16

17

18

19

20

21

22

ORDER - 17